UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLEY CAMERON,

                        Plaintiff,

      v.                                          **DECISION AND ORDER**
                                                            06-CV-46S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

       1.       In this case, Plaintiff Kimberley Cameron challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since April 9, 2002, due to bipolar depression. Plaintiff contends that her impairment has rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

       2.       Plaintiff applied for disability insurance benefits and Supplemental Security Income on July 10, 2002. Her claims were denied initially. At Plaintiff's request, an administrative hearing was held before ALJ Theodore Burock on June 29, 2004. Plaintiff and her paralegal were present at the hearing. The ALJ considered the case *de novo*, and on October 28, 2004, issued a decision denying Plaintiff's application for benefits. On November 19, 2005, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on January 23, 2006, challenging Defendant's final decision.[1]

       3.       On July 25, 2006, Plaintiff and Defendant filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the

---

[1] The ALJ's October 28, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion seeking the same is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983). Significantly, an individual is not considered disabled if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that he or she is disabled. See 42 U.S.C. § 1382c (3)(J).

      9.      In this case, the ALJ made the following findings with respect to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged of her disability (R. at 29);[2] (2) Plaintiff's polysubstance dependence, psychological impairment variously diagnosed as major depression, bipolar disorder, and schizophrenia, and chronic back problems constitute "severe" impairments (R. at 29); (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations (R. at 29); (4) absent drug and/or alcohol abuse, Plaintiff retains the residual functional capacity to perform light work, specifically, routine, repetitive tasks with no contact with the public and low productivity pressures (R. at 29); and (5) Plaintiff is able to return to her past relevant work and perform other work. (R. at 29). Considering Plaintiff's status as a younger individual, with a GED, no transferrable skills from her past work, and a residual functional capacity to perform a significant range of light work, the ALJ determined that the Medical-Vocational Guidelines directed a conclusion of "not disabled." (R. at 29). Ultimately, the ALJ determined that absent drug and alcohol abuse, Plaintiff was not under a disability as defined by the Act at any time through the date of his decision, October 28, 2004. (R. at 29-30)

      10.     Plaintiff argues that the ALJ incorrectly determined that Plaintiff's substance abuse was a contributing factor material to her disability. Specifically, Plaintiff cites to Dr. D. K. Singh's initial diagnosis of her polysubstance dependence and schizophrenia, and

---

[2] Citations to the underlying administrative record are designated as "R."

his statement that "[w]e had some question as to whether some of her symptoms were just drug related, but our assessment is that she has an underlying psychotic process." (R. at 423).[3] However, the evidence to which Plaintiff's cites does not undermine the ALJ's conclusion that although Plaintiff would have significant psychological impairments if she stopped using drugs, her limitations would not be disabling. Having reviewed the record in its entirety, this Court finds that substantial evidence supports the ALJ's conclusion.

As an initial matter, Dr. Singh's objective findings do not compel the conclusion that absent substance abuse, Plaintiff would be psychologically disabled. Although Dr. Singh reported that Plaintiff had numerous moderate and marked limitations, he did not indicate that these limitations reflected her mental abilities absent substance abuse. (R, at 427-29). In fact, in evaluating Plaintiff's limitations, Dr. Singh described her as "a schizophrenic woman with a very serious drug problem that has affected all areas of functioning over the last seven years." (R. at 426). The doctor further opined that Plaintiff needed to learn basic skills and interactions that are not drug related. (R. at 426). These statements

---

[3]Plaintiff contends that the ALJ violated the "treating physician's rule" by failing to give appropriate weight to Dr. Singh's diagnosis of an underlying psychiatric disorder. According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). As an initial matter, this Court finds that the ALJ's conclusion that Plaintiff suffered from polysubstance dependence, as well as a psychological impairment variously diagnosed as major depression, bipolar disorder, and schizophrenia, is wholly consistent with Dr. Singh's diagnosis. (R. at 29, 426-29).

Even assuming, as Plaintiff contends, that Dr. Singh believed that Plaintiff was psychologically disabled absent substance abuse, the ALJ was not obligated to adopt this conclusion. Supportability and consistency with other evidence of record are necessary in order for a medical opinion to be accorded controlling weight. See Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). That is, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling[, a]nd the less consistent the opinion is with the record as a whole, the less weight it will be afforded." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); Segarra v. Apfel, 58 F. Supp. 2d 26, 32 (E.D.N.Y. 1999). The record in this case clearly shows that drug addiction is a contributing factor material to Plaintiff's psychological disability as determined by the ALJ. In any case, certain findings, including the ultimate finding of whether a claimant is disabled, are reserved to the Commissioner. See 20 C.F.R. § 404.1527(e).

clearly indicate that substance abuse was a material factor in Plaintiff's disability determination.

Plaintiff's documented improvement when she was not using drugs provides further support for the ALJ's conclusion that absent drug abuse, Plaintiff's mental problems would not render her disabled. For example, Dr. Singh noted that Plaintiff exhibited marked improvements since she moved into Etaria Rehabilitation center. (R. at 424). He reported that her attitude, appearance and behavior were normal, her speech relevant and coherent, and her thoughts organized with no indicia of delusions or hallucinations. (R. at 424). Moreover, during this period of abstinence, Plaintiff's mood and affect were appropriate, her sensorium, intellect, insight and judgment were adequate, and her socialization and appearance were improved. (R. at 424-25).

Moreover, when Plaintiff was hospitalized for seven days in April of 2002, she reported that "she was heavy into drugs," cocaine specifically, and that she only suffered manic episodes when she was using. (R. at 130, 135). During this and other periods of hospitalization when she did not use drugs, Plaintiff ability to function was greatly improved. For example, after being hospitalized in February of 2002, Plaintiff's Global Assessment of Functioning ("GAF") improved from 25 upon admission to 60 upon discharge. (R. at 328). In June of 2003, after a 6-day hospitalization (R. at 280-317), Plaintiff was much more alert and stable and less dysphoric than when she was admitted. (R. at 281). She denied any further auditory hallucinations or psychotic signs or symptoms, and her GAF improved from 25 upon admission to 55 upon discharge. (R. at 280-81).

Plaintiff's own testimony supports the ALJ's determination that Plaintiff's mental impairments were not disabling when she was not using drugs. At the hearing held on June 29, 2004, Plaintiff testified that since she stopped using illegal drugs, she was doing

very well, and had no symptoms of schizophrenia. (R. at 56-57). She indicated that when she used drugs, she hallucinated, although she had not heard voices for a couple of years. (R. at 56-57). Plaintiff contends that it was erroneous for the ALJ to rely on her testimony in part, while questioning her credibility overall. However, it is not inappropriate for an ALJ to find some of Plaintiff's statement's more credible than others. "It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." Aponte v. Sec'y, Dep't Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted). Under the circumstances, this Court finds that the ALJ properly concluded that Plaintiff's substance abuse was a contributing factor to the determination of her disability.

11.    Plaintiff next argues that the ALJ inappropriately relied on the testimony of the vocational expert in determining whether she could perform her past relevant work, because the ALJ's hypothetical question failed to relate to her impairments as determined by Dr. Singh and the expert's testimony was unclear. For the reasons already stated, this Court finds that the ALJ properly determined what Plaintiff's limitations would have been if she stopped using drugs and gave appropriate weight to Dr. Singh's findings. Secondly, even if the questions and answers relating to Plaintiff's ability to perform her past work as a bread packager were ambiguous, the vocational expert was clear that Plaintiff could perform several assembly type jobs which exist in significant numbers in the national economy. This testimony unambiguously supports the conclusion that absent her drug use, Plaintiff was not disabled within the meaning of the Act. That being the case, any vagueness in the ALJ's questions regarding Plaintiff's past work, if clarified, would not have changed the ultimate determination that she was not entitled to benefits.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions based on that evidence. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error in the ALJ's decision and further finding that his decision is supported by substantial evidence, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: March 7, 2007
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge